**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LOGIC DEVICES, INC.,

    Plaintiff,

  v.

APPLE, INC.,

    Defendant.
/

No. C 13-02943 WHA

**ORDER CONDITIONALLY GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND VACATING HEARING**

In this patent-infringement action, plaintiff moves for leave to file a first amended complaint. For the reasons stated below, the motion is **CONDITIONALLY GRANTED IN PART AND DENIED IN PART**. The hearing set for February 20 is **VACATED**.

### STATEMENT

The procedural history of this action has been set forth before (Dkt. No. 36). In brief, plaintiff filed a complaint alleging infringement of U.S. Patent No. 5,524,244 on June 26, 2013. Plaintiff contends that the asserted patent claims a priority date of July 11, 1988, and expired on June 4, 2013 (Amd. Compl. ¶ 22).

On January 2, 2013, plaintiff served infringement contentions (Dkt. No. 41-1). Though the contentions state that "Apple infringes all claims," plaintiff charted only "representative claim 6." Plaintiff did not chart the other claims even though Patent Local Rule 3-1(c) requires a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." The accused products identified in plaintiff's infringement contentions are versions of the "Apple iPhone, Apple iPad, Apple iMac, Apple iPod Touch, [and] Apple iPod." Plaintiff did not provide "a description of the acts of the alleged indirect

infringer that contribute to or are inducing" direct infringement for each claim alleged to have been indirectly infringed. Patent L.R. 3-1(d). In fact, plaintiff's contentions are silent on indirect infringement. Plaintiff's contentions are also silent as to the basis for any alleged willful infringement, even though such disclosures must be made pursuant to Patent Local Rule 3-1(h). Infringement contentions may be amended "only by order of the Court upon a timely showing of good cause." Patent L.R. 3-6.

A January 7 order granted defendant's motion to dismiss plaintiff's allegations of inducement, contributory infringement, and willfulness. Plaintiff was warned that no motion to amend the complaint would be granted unless plaintiff reimbursed defendant for the fees and costs of the motion to dismiss (Dkt. No. 36).

On January 10, plaintiff moved for leave to amend the complaint. Defendant filed an opposition and on January 29, plaintiff filed a reply. The motion is noticed for February 20.

**ANALYSIS**

Although leave to amend is freely given when justice so requires, it is not granted when the amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

**1.    INDIRECT INFRINGEMENT AND WILLFULNESS.**

Plaintiff moves to amend the complaint to "allege the elements of Inducement, Contributory Infringement, and Willfulness" (Br. 2). Indirect infringement requires that the accused infringer have knowledge of the relevant patent and knowledge that its acts contribute to or encourage the infringement of the patent. *Global-Tech Appliances, Inc. v. SEB S.A.*, — U.S. —, 131 S. Ct. 2060, 2068 (2011). To allege inducement, the complaint must contain facts plausibly showing that defendant specifically intended its customers to infringe the asserted patent and knew that the customer's acts constituted infringement. To allege contributory infringement, the complaint "must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337–39 (Fed. Cir. 2012).

Defendant argues that amendment is futile and prejudicial for three reasons. *First*, the proposed first amended complaint fails to state a claim for indirect or willful infringement because it lacks allegations regarding the requisite mental state. Plaintiff responds that proposed paragraphs 12, 13, 24–31 support Apple's knowledge of the patent. Not so. Plaintiff's proposed amendments fall woefully short of pleading Apple's knowledge of the asserted patent and infringement. For example, plaintiff's proposed amendments include the following:

> 12. Based on these novel programming systems and innovative techniques and methods, Apple knew or reasonably should have known, about the existence and import of Plaintiff's '244 Patent as it undertook the development of its iOS operating systems and related software, described herein.
>
> 13. After Logic Devices acquired the patents in 1997, Logic Devices began selling and providing to others the SPROC 1200 and SPROC 1400 processors. Based on the use of a "shared memory," code was relatively easy to write based on the ability to share memory partitions among different processors. Logic Devices also provided a programming development kit that was called SPROClab. The product chip data sheets were marked with the Logic Devices patents, including the '244 Patent.
>
> \*   \*   \*
>
> 24. In view of the state of technology available during the development of iOS, there was no practical way for Apple's programmers and developers to have developed iOS around the '244 Patent, a fact which Apple knew or should have known as a leader in the industry. Thus, Apple developed each version of iOS despite an objectively high likelihood that its development efforts constituted infringement of Logic Devices' patent. Accordingly, Apple's development efforts constituted willful infringement.
>
> \*   \*   \*
>
> 30. Practically speaking, there were no noninfringing alternatives available throughout the development timeframe for iOS. The only alternative was to employ a much less efficient programming process, which would have at least doubled the programming time. Plaintiff contends that, had the invention not been infringed by Apple, instead of being at version 7.0, Apple's iOS might still be at version 3.0.
>
> 31. The infringement of Plaintiff's patent occurred upstream in the creation and optimization of software for these end devices. Logic Devices contends that the only viable systems and methods employed to develop software for a device possessing a CPU and GPU that allow the CPU access to the programs of the GPU would undoubtedly infringe Claim 6 of the '244 Patent. Consequently, Apple contributorily infringed one or more of the claims of the '244

3

> Patent, and/or induced the infringement of one or more of the claims of the '244 Patent.

\* \* \*

Paragraph 10 in plaintiff's original complaint stated:

> The SPROC processor used a cutting-edge programmable digital signal processing, or DSP, architecture that included a centralized shared memory, a host processor, and multiple independent general signal processors. The innovative SPROC architecture was developed by Star Semiconductor and was awarded the "DSP Innovation of the Year" by Electronic Design Magazine in 1992.

In short, plaintiff's theory is that defendant knew or "should have known" about the asserted patent (issued in June 1996) because a magazine granted plaintiff's processor an award in 1992, plaintiff began selling signal processors in 1997, plaintiff provided a software called SPROClab, and some product data sheets were marked with the asserted patent (Compl. ¶¶ 10, 12, 13). Because of the "state of the technology available during the development of the [defendant's] iOS" and because "[p]ractically speaking, there were no noninfringing alternatives" at the time, "there was no practical way for Apple's programmers and developers to have developed the iOS around the '244 Patent" — "a fact which Apple knew or should have known as a leader in the industry" (*id*. ¶¶ 24, 30). These allegations do not suffice to allege the requisite mental state for an indirect infringement or willfulness claim. A sampling of isolated past events and Apple's "leader[ship] in the industry" ten years later do not support an inference that Apple knew about the asserted patent and its infringement. Similarly, plaintiff's vague allegation that its systems and methods were "novel" and "innovative" at the time do not support an inference that Apple knew about the asserted patent. Furthermore, the complaint is still devoid of any allegations that Apple believed its customer's actions would infringe. Plaintiff instead baldly states that "the only viable systems and methods employed to develop software for a device possessing a CPU and GPU that allow the CPU access to the programs of the GPU would undoubtedly infringe Claim 6 of the '244 Patent" — a statement untethered to Apple or Apple's customers other than to say that "[c]onsequently, Apple contributorily infringed one or more of the claims of the '244 Patent, and/or induced the infringement of one or more of the claims of the '244 Patent" (Compl. ¶ 31).

4

This is precisely the type of formulaic recitation of law insufficient to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

*Second*, plaintiff's infringement contentions, served prior to the dismissal order, omitted indirect infringement and willfulness allegations. The contentions did not describe any acts of indirect infringement or state the basis for any willfulness claim, even though the patent local rules explicitly require such disclosures. Patent L.R. 3-1(d), (h). The patent local rules were designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed. Plaintiff now provides no explanation whatsoever for this shortfall in its contentions. Amendment of the complaint is thus a futile exercise because plaintiff's own infringement contentions lack the very claims plaintiff seeks to add to the complaint. Prior to the dismissal order, if plaintiff truly intended to pursue indirect infringement and willfulness, plaintiff should have timely disclosed those theories pursuant to Patent Local Rule 3-1. Plaintiff failed to do so, and now lives with that choice.

*Third*, plaintiff argues that amendment is appropriate because "Apple can fully explore the basis for Logic Devices' claims of infringement during the discovery phase," citing to antiquated "notice pleading" decisions. This argument has been repudiated by *Twombly*. Defendant is not forced to incur expense in order to learn what plaintiff must plead up-front.

Accordingly, plaintiff's indirect infringement and willfulness "claims" remain dismissed and plaintiff's motion to add allegations of indirect infringement and willfulness is **DENIED**.

### 2. OTHER AMENDMENTS.

Plaintiff also proposes a series of amendments for which leave to amend is **GRANTED**. Defendant argues that these amendments have no bearing on indirect infringement and willfulness, the issues raised in plaintiff's motion. This reading is too narrow. Plaintiff was not required to restrict its proposed amendments to indirect infringement and willfulness. Plaintiff could (and did) propose amendments to clarify and supplement its direct infringement claim.

Accordingly, plaintiff may, subject to the below conditions, file a new first amended complaint with the following paragraphs taken from plaintiff's proposed first amended

5

complaint: 20, 22, 25, 26, 29, and footnotes 2 and 3 (Dkt. No. 37-1).  To be clear, the paragraphs (footnotes omitted) plaintiff may use in the amended complaint are as follows:

> 20.  Apple develops and manufactures, or has manufactured for it, the Apple Products, and each of the Apple Products includes at least a host processor and a signal processor.  These Apple Products include the Apple iPhone, Apple iPad, Apple iMac, Apple iPod Touch, Apple iPod.
>
> \*       \*       \*
>
> 22.  The '244 Patent claims a priority date of July 11, 1988, was filed on February 15, 1994, issued June 4, 1996, and, due to a Terminal Disclaimer, expired on June 4, 2013.  Logic Devices contends that there was no practical way for Apple's smartphone software development efforts to have designed around the '244 Patent.
>
> \*       \*       \*
>
> 25.  The '244 Patent is infringed by Apple's software development in the smartphone industry (as well as tablet-type devices, lap-tops, desk-tops and devices that employ similar architectures that includes a host processor and Graphical Processing Unit ("GPU")).  Logic Devices contends that this patent covers the development process for the operating system and graphics processing software for Apple's smartphones (iPhones), as well as any other devices with a similar architecture that employ a host processor and a slave processor, such as a GPU.
>
> 26.  Apple directly infringes the '244 Patent.  Specifically, Plaintiff believes that the processes and techniques used by Apple for developing operating system and graphics software for the Apple products, which processes and techniques include the use of a high-level programming language ("Language") and the architecture of a host processor and a GPU that permits access by the host processor to the software of the GPU, directly infringe Claim 6 of the '244 Patent.
>
> \*       \*       \*
>
> 29.  The invention of Claim 6 of the '244 Patent permits programmers to much more efficiently write and debug programs that operate on the iPhone's host processor ("CPU") and programs that operate on the iPhone's GPU and which programs interact with each other in the functioning of the iPhone.  Without the invention, debugging efforts for these programs that interact with each other would require debugging of each of the programs operating on the CPU and each of the programs operation on the GPU separately.  Such distinct and separate debugging efforts are much less efficient and time consuming in that multiple errors located on multiple chips (i.e., both the CPU and GPU), are very difficult and time-consuming to correct.  Plaintiff contends that the use of a single debugging process, as the invention permits, cuts

> programming time for the operating system in at least half, if not more than half.

These proposed amendments are lifted verbatim from plaintiff's infringement contentions and are thus not entirely new. This order permits plaintiff to add these paragraphs only.

## CONCLUSION

In sum, plaintiff's motion for leave to file a first amended complaint is **CONDITIONALLY GRANTED IN PART AND DENIED IN PART**. A January 7 order warned plaintiff that it would be liable to reimburse defendant for fees and costs incurred from the motion to dismiss. "No motion to amend will be granted, however, until the expense is paid" (Dkt. No. 36). Accordingly, within **FIVE CALENDAR DAYS** of this order, defendant shall file a detailed declaration breaking down all attorney and paralegal time and expenses reasonably incurred on the motion to dismiss. The declaration should include a detailed description of the work, giving the date, hours expended, attorney/paralegal name, task for each work entry, billable rate, and amount sought, in chronological order. Within **EIGHT CALENDAR DAYS**, the parties shall meet and confer in person or via telephone regarding the expenses sought. Within **TWELVE CALENDAR DAYS**, the parties shall file a joint stipulation indicating the agreed upon amount and stating under oath that plaintiff has paid the expense. Once the expense is paid, within **FOURTEEN CALENDAR DAYS** of this order, plaintiff may re-file a first amended complaint with paragraphs 20, 22, 25, 26, 29, and footnotes 2 and 3 from plaintiff's proposed first amended complaint. Plaintiff, of course, may re-number the first amended complaint appropriately and remove the references to indirect and willful infringement in the prayer for relief. Defendant's response is due within **FOURTEEN DAYS** after being served with the operative first amended complaint. The hearing set for February 20 is **VACATED**.

**IT IS SO ORDERED.**

Dated: February 4, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE