COOLEY LLP
TIMOTHY S. TETER (171451)
(teterts@cooley.com)
BENJAMIN G. DAMSTEDT (230311)
(bdamstedt@cooley.com)
PRIYA B. VISWANATH (238089)
(pviswanath@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:     (650) 843-5000
Facsimile:      (650) 849-7400

COOLEY LLP
MATTHEW LEARY (pro hac vice)
(mleary@cooley.com)
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021-8023
Telephone:     (720) 566-4000
Facsimile:      (720) 566-4099

Attorneys for Defendant
Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| Logic Devices Incorporated, | Case No.  13-cv-02943-WHA |
| Plaintiff, | **APPLE'S MOTION FOR FEES AND COSTS** |
| v. | Date:          December 4, 2014 |
| Apple Inc., | Time:          8:00 a.m. |
| Defendant. | Judge:         Hon. William H. Alsup |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

STATEMENT OF ISSUE TO BE DECIDED ....................................................................... 1

I.     INTRODUCTION ..................................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................................... 2

    A.  LDI Filed a Suit with a Fatal Defect—The Asserted Claim Is Invalid for Obviousness-Type Double Patenting. .......................................................... 2

    B.  Despite this Defect, LDI Pressed Forward with Litigation. ...................................... 4

    C.  LDI Prolonged the Litigation with Shifting Theories on Double Patenting. .......... 6

III.   LEGAL STANDARD ............................................................................................... 9

IV.    ARGUMENT ............................................................................................................ 9

    A.  The Supreme Court's *Octane Fitness* and *Highmark* Cases Protect Defendants Against Suits Like LDI's. ........................................................ 9

    B.  LDI's Pursuit of this Case Meets the Exceptional Case Standard, Requiring LDI To Pay Apple's Reasonable Fees and Costs. .................................... 10

        1.  LDI's case had no substantive merit. ..................................................... 10

        2.  LDI filed and continued to litigate its case despite having no meaningful chance of prevailing on the merits. ....................................... 12

            a.  LDI failed to perform a reasonable pre-filing investigation. ........ 12

            b.  LDI continued pursuing this litigation with shifting sands tactics. ........................................................................................ 13

            c.  LDI's improper litigation tactics pervaded the case. ................... 14

    C.  Apple's Requested Attorney Fees and Costs Are Reasonable. ........................... 17

        1.  The requested hours were reasonably expended in defending against LDI's suit. ................................................................................. 17

        2.  The requested rates are consistent with market rates for this legal practice and geographical area. ............................................... 18

        3.  The overall lodestar amount is well below litigation fees and costs for similar cases .............................................................................. 19

        4.  Apple's requested non-taxable costs are reasonable. ............................... 20

V.     CONCLUSION ....................................................................................................... 20

1
2
3

# **TABLE OF AUTHORITIES**

4

**Page(s)**

5

**Cases**

6

*Action Star Enter. v. Kaijet Tech.*,
7
    No. 12-8074, slip op. (C.D. Cal. July 7, 2014) ................................................................ 10, 14

8
*BK-Lighting v. Vision3 Lighting*,
    No. 06-2825, slip op. (C.D. Cal. Nov. 16, 2009) ..................................................................... 19
9

*Boehringer Ingelheim Int'l v. Barr Labs.*,
10
    592 F.3d 1340 (Fed. Cir. 2010)................................................................................................. 3

11
*Boehringer Ingelheim v. Barr Labs.*,
    592 3d 1340, 1347 (Fed. Cir. 2010) ....................................................................................... 11
12

13
*Brooks Furniture Mfg. v. Dutailier Int'l*,
    393 F.3d 1378 (Fed. Cir. 2005)............................................................................................... 10
14

*Central Soya v. Geo. A. Hormel & Co.*,
15
    723 F.2d 1573 (Fed Cir. 1983)................................................................................................ 20

16
*Chalumeau Power Systems v. Alcatel-Lucent*,
    No. 11-1175, slip op. (D. Del. Sept. 12, 2014) ...................................................................... 10
17

18
*Highmark v. Allcare*,
    572 U.S.___, 134 S. Ct. 1744 (2014)........................................................................................ 9
19

*Kilopass Tech. v. Sidense*,
20
    No. 10-2066-SI, slip op. (N.D. Cal. Aug. 12, 2014)..................................................... 9, 12, 13

21
*Linex Tech. v. Hewlett-Packard.*,
    No. 13-0159, slip op. (N.D. Cal. Sept. 15, 2014).................................................................... 12
22

23
*Linex Tech. v. Hewlett-Packard*,
    No. 4:13-cv-00159, slip op. (N.D. Cal. Sept. 15, 2014) .................................................... 10, 12
24

*Love v. Mail on Sunday*,
25
    No. 05-7798, 2007 WL 2709975 (C.D. Cal. Sept. 7, 2007) ................................................... 19

26
*Lumen View Tech. v. Findthebest.com*,
    No. 1:13-cv-03599-DLC, slip op. (S.D.N.Y. May 30, 2014) ............................... 10, 12, 13, 14
27

28

Cooley LLP
Attorneys At Law
Palo Alto

ii.

Apple's Mot. for Fees & Costs
13-CV-02943-WHA

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Octane Fitness v. ICON Health & Fitness*,
134 S. Ct. 1749 (2014) ................................................................. 9, 10, 12

*PersonalWeb Tech. v. Google*,
No. 13-1317, slip op. (N.D. Cal. Aug. 19, 2014) .................................... 19

*Precision Links v. USA Prods Group*,
No. 08-0576, slip op. (W.D.N.C. June 24, 2014)................................... 9, 12

*Rawcar Group v. Grace Med.*,
No. 13-1105, slip op. (S.D. Cal. Aug. 4, 2014) ...................................... 17

*Rubbermaid Comm. Prod. v. Trust Comm. Prod.*,
No. 13-2144, slip op. (D. Nev. Aug. 22, 2014)......................... 18, 19, 20

*Yufa v. TSI*,
No. 09-1315-KAW, slip op. (N.D. Cal. Aug. 14, 2014) ................................ *passim*

**Statutes**

35 U.S.C. § 285 ...................................................................... *passim*

**Other Authorities**

Local Rules 4-1 ........................................................................... 15

Local Rule 4-2........................................................................ 15, 16

Local Rule 54-5........................................................................... 1

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

APPLE'S MOT. FOR FEES & COSTS
13-CV-02943-WHA

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 4, 2014, at 8:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable William Alsup, United States District Court, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Apple Inc. will move the Court for fees and costs pursuant to Local Rule 54-5 and 35 U.S.C. § 285.

## STATEMENT OF ISSUE TO BE DECIDED

In light of the substantive weakness of the case brought and pursued by Plaintiff Logic Devices, Inc. ("LDI"), as well as LDI's improper litigation tactics, Apple respectfully requests an order finding this case exceptional and awarding attorney fees and non-taxable costs under 35 U.S.C. § 285.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

LDI had no basis for accusing Apple of infringing U.S. Patent No. 5,524,244 (the "'244 patent")—an expired, invalid patent that describes and claims obsolete technology.  LDI did not perform any pre-filing diligence and never offered a tenable infringement theory.  Instead, LDI speculated that Apple's R&D teams *might* have used the obsolete system described in the '244 patent.  LDI admittedly filed suit *before* consulting with patent counsel.  Even if LDI thought that Apple might have practiced the claims, LDI had no basis to file suit.  Despite its promise to the Patent Examiner, the applicants never filed a terminal disclaimer, and therefore, the '244 patent was invalid due to obviousness-type double patenting.  LDI's litigation counsel contends that he made a "mistake" and did not realize that the '244 patent is invalid.  But Apple's invalidity defense would have been apparent from even a cursory review of the '244 prosecution history.  As the Court observed, LDI "goofed up when they filed this lawsuit" but compounded its error by "pushing on anyway."[1]

---

[1] Oct. 16, 2014 Tr., Dkt. 78 at 23:20-23 (Court: "So to me it looks like somebody goofed up when they filed this lawsuit ... under the incorrect premise that there had been a terminal disclaimer filed in time, and it turned out not to be true, but you're pushing on anyway.").

1   LDI's decision to file suit without a reasonable pre-filing investigation, by itself, makes

2   this case exceptional and justifies an award of fees.  LDI's "shifting sands" litigation tactics to

3   delay resolution of this case makes the case all the more exceptional.  LDI first claimed that a

4   terminal disclaimer had been filed.  When that assertion fell apart, LDI shifted to claiming that

5   the Examiner withdrew the obviousness-type double patenting, a claim that had no basis in fact or

6   the law.  In its summary judgment opposition, LDI made the new argument that the asserted

7   claim was broader than the earlier claims from the '511 patent.  But that fact only further

8   confirmed the invalidity of the asserted claim under the governing law.  Finally, LDI tried to shift

9   its argument one last time, attempting during the non-adversarial tutorial to "larder the record

10  with some new theory."  (Oct. 16, 2014 Tr., Dkt. 78 at 28:8-23.)

11      LDI's filing and pursuit of this case is precisely the type of conduct intended to be

12  remedied by section 285 of the Patent Act.  As detailed below, Apple thus requests that the Court

13  award attorney fees to Apple in the amount of $465,190 and non-taxable costs in the amount of

14  $14,154.29.

15  **II.    FACTUAL BACKGROUND**

16      **A.    LDI Filed a Suit with a Fatal Defect—The Asserted Claim Is Invalid for
            Obviousness-Type Double Patenting.**

17      In the early 1990s, Star Semiconductor sought a series of related patents, two of which

18  were relevant to this case.  (MSJ Order, Dkt. 73 at 1-2.)  The first patent—U.S. Patent No.

19  5,287,511 (the "'511 patent") issued in February 1994.  ('511 patent, Dkt. 57.)  The second

20  patent—the asserted patent—issued in June 1996.  ('244 patent, Dkt. 56-1.)

21      The issue of obviousness-type double patenting featured prominently during the

22  prosecution of the asserted patent.  (MSJ Order, Dkt. 73 at 2-3, 6-7.)  At the outset of prosecution,

23  the Examiner held an interview with prosecuting counsel, explaining that the claims were

24  "rejectable under double patenting."  ('244 prosecution history, Dkt. 62 at LDI_003445.)  During

25  the interview, "Applicants' representative agreed to file [a] terminal disclaimer for all claims in

26  the pending case."  (*Id.* at LDI_003445.)  The Examiner followed the interview with a formal

27  rejection for obviousness-type double patenting, to which the prosecuting attorney responded by

28

"offer[ing] to submit a terminal disclaimer upon the disposal of all other issues in the application." (*Id.* at LDI_003455 ("Upon notification that the claims are in such condition, the applicant will submit the proper terminal disclaimer.").) Later during prosecution, the prosecuting attorney again promised to file a terminal disclaimer. (*Id.* at LDI_003483.) A second Examiner eventually allowed the '244 claims, which issued on June 4, 1996. ('244 patent, Dkt. 56-1.) The issuance of the '244 patent, however, came and went without Star Semiconductor filing any terminal disclaimer. (LDI's Resp. to RFAs, Dkt. 7 at 6 (No. 9).)

After a few years, Star Semiconductor became insolvent, and the plaintiff in this case, LDI, acquired Star Semiconductor's patents. (Compl., Dkt. 1, ¶ 9 n.1; MSJ Order, Dkt. 73 at 1.) The '511 patent expired on February 5, 2011, and the '244 patent expired on June 4, 2013. (MSJ Order, Dkt. 73 at 2.) LDI did not file a terminal disclaimer before the '511 patent expired, the deadline for doing so. (LDI's Resp. to RFAs, Dkt. 7 at 6 (No. 9).) *Boehringer Ingelheim Int'l v. Barr Labs.*, 592 F.3d 1340, 1347 (Fed. Cir. 2010).

Notwithstanding the prosecution history and its failure to file a terminal disclaimer, LDI filed suit against Apple on June 26, 2013. (Compl., Dkt. 1.) In response to LDI's complaint, Apple's answer specifically pled that "[t]he claims of the '244 patent are invalid ... under the doctrine of obviousness-type double-patenting." (Dkt. 39 at 5.)

Before filing this case, LDI appears to have conducted little, if any, pre-suit investigation. LDI's counsel admitted in September 2013 that LDI had not retained patent counsel before filing suit: "Plaintiff ***anticipates associating specialized patent counsel in this action*** and, therefore, has not yet served the Defendant."[2] (LDI CMC Statement, Dkt. 9 at 1-2 (emphasis added).) Nor had LDI retained a technical expert before it filed suit. In responding to the Court's order to show cause regarding LDI's failure to comply with the patent local rules, LDI's counsel stated that, as of March 6, 2014, "Plaintiff Logic Devices ... ***had not formally retained its anticipated patent expert***, Brian Von Herzen, Ph.D." (Farkas Aff., Dkt. 50, ¶ 3 (emphasis added).)

---

[2] LDI never associated any other patent counsel into the case.

**B.    Despite this Defect, LDI Pressed Forward with Litigation.**

Shortly after the case management conference, LDI served its initial disclosures and infringement contentions.  LDI's initial disclosures demanded damages of up to nearly $1 billion.  (LDI's Initial Discls., Ex. 1[3] at 4-7.)  LDI asserted that the alleged infringement resulted in saving "a development effort of at least two times (and possibly a number of multiples greater than two times) the actual R&D costs [Apple] incurred" in developing the iOS operating system for the iPhone and iPad products.  (*Id.* at 5.)  Offering calculations based on various "beliefs" and "assumptions" about Apple's R&D costs and LDI's bargaining power, LDI stated that its damages demand ranged from $130.3 million to $977.3 million.  (*Id.* at 6-7.)

In its infringement contentions, LDI contended, contrary to the facts, that a terminal disclaimer had been filed: "[T]he '244 Patent claims a priority date of July 11, 1988, was filed on February 15, 1994, issued June 4, 1996, and, ***due to a Terminal Disclaimer***, expires on June 4, 2013."  (Infr. Conts., Dkt. 41-1 at 5 (emphasis added).)  LDI repeated this contention about a terminal disclaimer in the proposed first amended complaint it filed with the Court.  (LDI's Prop. First Am. Compl., Dkt. 37-1 at 6-7, ¶ 22.)

Shortly thereafter, Apple requested that LDI's counsel provide a copy of the purported terminal disclaimer:

> LDI's infringement contentions assert that a terminal disclaimer was made for the '244 patent.  We haven't seen a copy of any terminal disclaimer and aren't aware of any having been filed with the PTO with respect to the '244 patent.  Given that you appear to disagree, please send us a copy of the terminal disclaimer that you mentioned in your contentions.

(Email to LDI's counsel, Dkt. 62-4 at 1.)  LDI did not respond to Apple's request.

Apple next served its invalidity contentions, which included a claim chart and explanation of its obviousness-type double patenting defense.  (Inv. Conts., Dkt. 62-3 at 25-27, Chart 2.)  At the same time, Apple served its first set of interrogatories, with the first interrogatory directed specifically to obviousness-type double patenting:

---

[3] "Ex." refers to the corresponding exhibit attached to the Declaration of Priya B. Viswanath in Support of Apple's Motion for Attorney's Fees, filed concurrently with this motion.

Cooley LLP
Attorneys At Law
Palo Alto

**APPLE'S MOT. FOR FEES & COSTS
13-CV-02943-WHA**

**INTERROGATORY NO. 1**

> State in detail the legal and factual basis for LDI's contention, if any, that the Asserted Claims of the Patent-in-Suit are not invalid for double patenting, including identifying any elements from the Asserted Claims that LDI contends are missing from the claims of the '511 patent, describing any disagreements that LDI has with the Examiner's double-patenting rejections, and identifying any terminal disclaimer (by date and production number), if any, that LDI contends is relevant to double patenting in this case.

(Apple's First Set of Interrogs., Dkt. 62-2, at 2-3.)  Apple also served a Request for Production, specifically requesting a copy of the alleged terminal disclaimer.  (Ex. 2, Request No. 2.)  Despite several requests from Apple, LDI never responded to Apple's interrogatories.  (*E.g.*, Emails to LDI's counsel, Dkt. 62-5, 62-6.)

After LDI failed to respond to the interrogatory, Apple followed up with LDI's counsel, reiterating that obviousness-type double patenting is case dispositive and requesting that LDI dismiss the case to avoid continuing the unnecessary expenditure of fees:

> LDI's asserted claim is invalid for obviousness-type double patenting. The Examiner noted the double-patenting problem during prosecution, and LDI's prosecution counsel did not dispute it. Instead, LDI's counsel said that he would file a terminal disclaimer before the '244 patent issued. He didn't do so, and LDI never filed a terminal disclaimer afterwards.

> LDI's only response to double patenting during this litigation has been to argue that a terminal disclaimer was filed. In its motion for leave to amend, LDI represented to the Court that "due to a Terminal Disclaimer, [the '244 patent] expired on June 4, 2013." (Dkt. No. 37.) LDI's representation was incorrect, both because no terminal disclaimer was ever filed and because a terminal disclaimer, if one had been filed, would have caused the '244 patent to expire on February 15, 2011.

> LDI's discovery responses have not disputed the lack of any terminal disclaimer. LDI's response to Apple's requests for production indicates that all relevant documents regarding any terminal disclaimer have already been produced. (LDI's Response to Request for Production No. 2.) Those documents do not contain any terminal disclaimer. Likewise, LDI has served no response whatsoever to Apple's interrogatory regarding obviousness-type double patenting, which specifically required LDI to identify any terminal disclaimer. (Apple's Interrogatory No. 1.)

1
2

Given these facts, LDI has no good faith basis to continue the suit. Indeed, we see no facts suggesting that LDI ever had a good faith basis to file the suit in the first instance.

3
4
5
6

*To avoid the unnecessary expenditure of fees in moving for summary judgment of invalidity, Apple requests that LDI dismiss its case with prejudice. Please respond by April 14, 2014, so that Apple may determine what relief it may need to seek from the Court.*

7

(Email to LDI's counsel, Dkt. 62-8 at 1-2 (emphasis added).)

8

### C.    LDI Prolonged the Litigation with Shifting Theories on Double Patenting.

9
10
11

In response, LDI's counsel began to change its theory, saying that his claims about the terminal disclaimer "may have been erroneous" but reiterating LDI's intent to continue pursuing the suit:

12
13
14
15
16

*My written statements concerning the terminal disclaimer on the '244 patent were based on information I received prior to the filing of the complaint, and may have been erroneous*, perhaps derived from a different patent. It may be that the Patent Office eventually dropped its request, so no terminal disclaimer was entered. We intend to further address these issues in our interrogatory responses, for which I previously requested an extension of time. *In any event, I do not believe that it follows that "LDI's asserted claim is invalid," as you state.*

17

(Email from LDI's counsel, Dkt. 62-8 at 1 (emphasis added).)

18
19
20
21
22

Following the email from LDI's counsel, Apple served requests for admission regarding the alleged terminal disclaimer and the obviousness-type double patenting defense.  In its responses LDI finally conceded that no terminal disclaimer was filed and confirmed its change in theory—LDI now asserted that the patent was valid because the Examiner had "withdrawn" the obviousness-type double patenting rejection:

23
24
25

REQUEST FOR ADMISSION NUMBER 9:

Admit that no terminal disclaimer has been filed for the Patent-in-Suit.

26
27

RESPONSE TO REQUEST FOR ADMISSION NUMBER 9:

Admitted.

28

1

REQUEST FOR ADMISSION NUMBER 10:

2

3

Admit that all claims of the Patent-in-Suit are invalid based on obviousness-type double patenting based on one or more claims of the '511 Patent.

4

RESPONSE TO REQUEST FOR ADMISSION NUMBER 10:

5

6

Denied. These rejections were withdrawn. *See*, LDI_003500, LLDI_003501.

7

(LDI's RFA Resps., Dkt. 62-1 at 6 (Nos. 9-10) (header emphasis omitted).)  LDI's assertion,

8

however, had no basis in the prosecution history.  When given a chance during oral argument,

9

LDI's counsel could point to nothing in the prosecution history to support the "withdrawal"

10

position.  (Oct. 16, 2014 Tr., Dkt. 78 at 24:7-26:19.)

11

Following the parties' settlement conference on July 29, 2014, Apple filed its motion for

12

summary judgment of invalidity based on obviousness-type double patenting on August 22, 2014.

13

(Minute Entry, Dkt. 53; MSJ, Dkt. 54.)

14

LDI's summary judgment opposition focused on a request to extend the litigation even

15

further.  (LDI's Opp., Dkt. 63 at 12-14.)  LDI admitted that it had "not taken any discovery on the

16

'double patenting' issues raised in the Summary Judgment Motion" despite the long pendency of

17

the case.  (*Id.* at 13.)  LDI asked for additional time to "have [Apple's Expert's] Declaration fully

18

evaluated," potentially take "discovery toward his assertions and conclusions," and "obtain the

19

necessary input" from the attorney who prosecuted the '244 patent.  (*Id.* at 13-14.)

20

Notwithstanding LDI's request, it took no additional discovery between the time of the request

21

(September 5th) and the hearing on the invalidity motion (October 16th).

22

LDI's September 5th opposition also argued that a continuance was warranted because its

23

counsel "has been preparing for a September 9, 2014 trial (in Arizona) on a matter that has been

24

pending for nearly four years."  (*Id.* at 12.)  LDI's counsel also filed a September 5th declaration

25

with this Court similarly asserting:

26

27

I have been scheduled to commence a trial on September 9, 2014 in Maricopa County, Arizona in a case that has been pending nearly four years (*RCLCO vs. Five Star, etc., et. al*, case number CV2010032608). Most of my recent efforts have been focused on

28

1       preparation for this out-of-state trial.

2 (Farkas Decl., Dkt. 63-1 at 3, ¶ 7.)

3       LDI's motion and counsel declaration omitted that the Arizona case had already settled.

4 When questioned about this issue at oral argument, LDI's counsel asserted: "When I said I had a

5 trial pending, the trial was still pending and set to go.... The statement was true at the time and

6 remained true up until the eve of that trial." (Oct. 16, 2014 Tr., Dkt. 78 at 39:16-19.)

7       As excerpted below, however, the filings in the Arizona case show that the parties had

8 entered into a settlement agreement no later than September 3rd, before LDI's September 5th

9 filings:

10       **NOTICE IS HEREBY GIVEN** that the parties have entered into a settlement agreement

11 which should be consummated by the end of the day Friday, September 5, 2014, and counsel for

12 the parties intend to shortly thereafter file a Stipulation for Dismissal, with Prejudice.

13       **RESPECTFULLY SUBMITTED** this 3rd day of September, 2014.

14

15 (Notice of Settlement, Ex. 3 at 1.)  The stipulation of dismissal for the Arizona case was itself

16 filed on September 4th:

17       Plaintiff and Defendants, through their respective counsel undersigned, hereby stipulate

18 and agree that all remaining unresolved issues in this action can be dismissed, with prejudice,

19 each party to bear their own costs and attorneys' fees, and that the Court may enter the Order of

20 Dismissal With Prejudice submitted contemporaneously herewith.

21       **RESPECTFULLY SUBMITTED** this 4th day of September, 2014.

22 **LAW OFFICES OF RICHARD D. FARKAS**      **DICKINSON WRIGHT PLLC**

23 By: /s/ Richard D. Farkas             By  /s/ Scott A. Holcomb
      Richard D. Farkas                   Scott A. Holcomb

24       15300 Ventura Blvd., Ste. 504         1400 N. Central Avenue, Ste. 1400
      Sherman Oaks, CA 91403             Phoenix, AZ 85004

25       Attorneys for Plaintiff                Attorneys for Defendants

26

27 (Stipulation for Dismissal with Prejudice, Ex. 4 at 1.)

28       On the merits of the summary judgment motion, LDI's expert raised the new theory that

1    the asserted claim is "broader" than the claims from the earlier patent.  (Von Herzen Decl., Dkt.

2    63-2 at 5, ¶ 20.)  After Apple reiterated in its reply brief that an earlier, narrower claim invalidates

3    a later, broader claim under the double-patenting doctrine[4], LDI shifted theories once again.  At

4    the technology tutorial, LDI drew a new distinction between "call by value" and "call by

5    reference."  (Sept. 29, 2014 Tr., Dkt. 72 at 37:11-15.)  LDI's expert argued that this distinction

6    made the claims of the earlier patent and the asserted patent "mutually exclusive."  (*Id.*)

7         The Court then heard oral argument on the invalidity motion and granted the invalidity

8    motion later that day.  (MSJ Order, Dkt. 73.)

9    **III.    LEGAL STANDARD**

10        In patent cases, "[t]he court in exceptional cases may award reasonable attorney fees to

11   the prevailing party."  35 U.S.C. § 285.  The standard of proof for section 285 is a preponderance

12   of the evidence.  *Octane Fitness v. ICON Health & Fitness*, 134 S. Ct. 1749, 1758 (2014).  The

13   standard of review is abuse of discretion.  *Highmark v. Allcare*, 572 U.S.___, 134 S. Ct. 1744,

14   1748-49 (2014).  Upon finding a case exceptional, courts also have discretion regarding the

15   amount of any fees awarded, with prior decisions addressing factors such as "the closeness of the

16   case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to

17   a fair allocation of the burdens of litigation as between winner and loser."  *Kilopass Tech. v.*

18   *Sidense*, No. 10-2066-SI, slip op. at 24 (N.D. Cal. Aug. 12, 2014) (citing *S.C. Johnson & Son,*

19   *Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986)).

20   **IV.    ARGUMENT**

21        **A.    The Supreme Court's *Octane Fitness* and *Highmark* Cases Protect Defendants
              Against Suits Like LDI's.**

22        Section 285 is a "discretionary fee-shifting provision" allowing a prevailing party to

23   recover its attorney fees upon a finding that a case is "exceptional."  *Octane Fitness,* 134 S. Ct. at

24   1753.  "[I]t would be a gross injustice not to compensate the Defendants for having to defend

25   against frivolous claims and for having to expend extra effort to counteract the Plaintiff's

26   frivolous litigation conduct."  *Precision Links v. USA Prods Group*, No. 08-0576, slip op. at 8-9

27

28   _____

     [4] Apple MSJ Reply Br., Dkt. 64 at 6.

(W.D.N.C. June 24, 2014).  Granting attorney fees also helps deter a patent owner from bringing and pursuing "a frivolous lawsuit with the sole purpose of extorting a settlement fee." *Chalumeau Power Systems v. Alcatel-Lucent*, No. 11-1175, slip op. at 7 (D. Del. Sept. 12, 2014).

Before *Octane Fitness*, the Federal Circuit had required proof of independently sanctionable conduct or that the litigation was both "brought in subjective bad faith" and "objectively baseless" to award fees under section 285.  *Brooks Furniture Mfg. v. Dutailier Int'l*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).  In *Octane Fitness*, the Supreme Court "rejected such a formal approach" and "lowered the standard for determining whether attorneys' fees are appropriate under 35 U.S.C. § 285."  *Yufa v. TSI*, No. 09-1315-KAW, slip op. at 3 (N.D. Cal. Aug. 14, 2014).  According to the Supreme Court: "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness*, 134 S. Ct. at 1756.  District courts "determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Id.*

Under this standard, for example, a plaintiff should bear the fees of a litigation where it "knew or should have known that its ... claims were meritless."  *Linex Tech. v. Hewlett-Packard*, No. 4:13-cv-00159, slip op. at 12 (N.D. Cal. Sept. 15, 2014) (granting Apple attorney fees); *Lumen View Tech. v. Findthebest.com*, No. 1:13-cv-03599-DLC, slip op. at 15 (S.D.N.Y. May 30, 2014) (awarding fees where patent owner failed to conduct adequate pre-suit investigation). Likewise, a plaintiff should bear the burden of litigation fees where it "litigates ... in an unreasonable manner" by failing to comply with its discovery obligations.  *Action Star Enter. v. Kaijet Tech.*, No. 12-8074, slip op. at 9-11 (C.D. Cal. July 7, 2014).

## B.   LDI's Pursuit of this Case Meets the Exceptional Case Standard, Requiring LDI To Pay Apple's Reasonable Fees and Costs.

### 1.   LDI's case had no substantive merit.

LDI's case is exceptional due to its substantive weakness, from both a legal and factual perspective. *Octane Fitness*, 134 S. Ct. at 1755-56.  None of LDI's shifting arguments on double

Cooley LLP
Attorneys At Law
Palo Alto

10.

Apple's Mot. for Fees & Costs
13-cv-02943-WHA

1    patenting had any merit.

2          Initially, LDI claimed that a terminal disclaimer had been filed, but this was factually

3    untrue.  As LDI's counsel admitted at the summary judgment hearing, he made a "mistake."

4    (Oct. 16, 2014 Tr., Dkt. 78 at 9:9-10.)

5          Next, LDI raised a "withdrawal" argument that had no basis in fact and was legally

6    irrelevant.  LDI argued that the Examiner withdrew obviousness-type double patenting during

7    prosecution.  (LDI's RFA Resps., Dkt. 62-1 at 6 (No. 10); LDI's MSJ Opp., Dkt. 63 at 14.)  As

8    the Court held in its Order, neither of the pages from the prosecution history identified by LDI

9    "respond[ed] to the obviousness-type double patenting problem" or "stated that the examiner

10   withdrew the double patenting challenge."  (MSJ Order, Dkt. 73 at 6.)  Regarding the prosecuting

11   attorney's promise to file a terminal disclaimer, LDI argued that the prosecuting attorney had

12   agreed to file a terminal disclaimer only "if necessary."  (LDI's Opp., Dkt. 63 at 14.)  As the

13   Court held, LDI's "[c]ounsel was flat-out wrong."  (MSJ Order, Dkt. 73 at 3.)  Instead, "[o]n at

14   least two occasions, the prosecuting attorney promised that upon 'notification that the claims are

15   in such [allowable] condition, *the applicant will submit the proper terminal disclaimer*."  (*Id.* at

16   6-7 (emphasis in original).)  In any event, any purported withdrawal would have been irrelevant

17   to the substantive invalidity question in this case.  *See Boehringer Ingelheim v. Barr Labs.*, 592

18   3d 1340, 1347 (Fed. Cir. 2010) (obviousness-type double patenting may be raised during

19   litigation).

20         LDI then made an argument in opposition to summary judgment that only confirmed the

21   invalidity of the asserted claim.  LDI argued that the later, asserted claim from the '244 patent

22   was broader than the earlier claims from the '511 patent.  Specifically, "[i]n Logic Devices' view,

23   the difference was that claim 26 covered 'only a function with a parameter' whereas claim 6

24   reaches 'parameters, functions, inputs and outputs.'"  (MSJ Order, Dkt. 73 at 5.)  As the Court

25   held, however, that "difference does not save the day because it is firmly established that a later

26   genus claim is not patentably distinct from an earlier species claim."  (MSJ Order, Dkt. 73 at 5

27   (citing, *e.g.*, *Perricone v. Medicis Pharm.*, 432 F.3d 1368, 1374 (Fed. Cir. 2005) ("[T]he earlier

28   species renders the later genus claims invalid under non-statutory double patenting.")).)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

APPLE'S MOT. FOR FEES & COSTS
13-CV-02943-WHA

Finally, LDI attempted to interject a new argument during the technology tutorial based on a purported distinction between "call by value" and "call by reference." As the Court found: "This was sandbagging.... Logic Devices also should not have used a technology tutorial to introduce a new summary judgment argument." (MSJ Order, Dkt. 73 at 7.) In addition to finding the argument untimely, the Court further held that the distinction LDI attempted to raise was "artificial" and "does not render the claims patentably distinct." (*Id.*)

In sum, where, as here, the patent owner has pursued a case having no meaningful chance of success, courts have awarded fees. *E.g.*, *Lumen View*, slip op. at 12-13; *Precision Links*, slip op. at 6.

### 2. LDI filed and continued to litigate its case despite having no meaningful chance of prevailing on the merits.

This case is exceptional not only due to the substantive weakness of LDI's case, but also due to "the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1755-56. A number of factors highlight LDI's improper litigation conduct.

### a. LDI failed to perform a reasonable pre-filing investigation.

"Patent litigation is a burdensome venture for all parties involved. Thus, plaintiffs must conduct careful investigation before bringing suit." *Linex Tech. v. Hewlett-Packard.*, No. 13-0159, slip op. at 8 (N.D. Cal. Sept. 15, 2014).

Here, a reasonable investigation of the asserted patent's prosecution history would have revealed that a terminal disclaimer had been needed but was never filed. *Linex Tech.*, slip op. at 16-18 (granting Apple's attorney's fees where review of prosecution history would have revealed disclaimer of claim scope). LDI's counsel did not review the prosecution history but instead relied on "information" he allegedly received before filing suit: "My written statements concerning the terminal disclaimer on the '244 patent were based on information I received prior to the filing of the complaint, and may have been erroneous, perhaps derived from a different patent." (Email to LDI's counsel, Dkt. 62-8 at 1-2 (emphasis added).)

LDI's decision to file suit without conducting a proper pre-suit investigation renders LDI subject to fees. *Linex*, 13-0159, slip op. at 12; *Kilopass*, slip op. at 23 ("Kilopass litigated the

Cooley LLP
ATTORNEYS AT LAW
PALO ALTO

12.

APPLE'S MOT. FOR FEES & COSTS
13-CV-02943-WHA

present action in an unreasonable manner by failing to conduct an adequate pre-filing investigation, … ."); *Yufa*, slip op. at 4-5 (finding plaintiff patentee did not conduct an adequate pre-filing investigation); *Lumen View*, slip op. at 13 (finding the case exceptional where "the most basic pre-suit investigation would have revealed" that the case had no merit).

### b. LDI continued pursuing this litigation with shifting sands tactics.

LDI also pushed forward with its litigation in the face of clear notice that the asserted claim was invalid for obviousness-type double patenting, repeatedly changing its arguments and unduly delaying the ultimate resolution of the case.  LDI's shifting theories weigh in favor of awarding fees.  *Kilopass*, slip op. at 23-24 (awarding fees based, in part, on the patent owner "shifting its theories … late in the litigation and without following the proper procedures for amendment of contentions, and engaging in conduct that at times amounted to gamesmanship").

In its infringement contentions and proposed amended complaint, LDI affirmatively misstated that a terminal disclaimer had been filed.  (LDI's Infr. Conts., Dkt. 41-1 at 9-11; LDI's Prop. First Am. Compl., Dkt. 37-1 at 6-7, ¶ 22.)   Apple responded to LDI's statement by requesting a copy of the alleged terminal disclaimer.  (Email to LDI's counsel, Dkt. 62-4 at 1.)  When LDI did not respond to Apple's correspondence, Apple served an interrogatory requesting LDI's contentions regarding double patenting.  (Apple Interrogs., Dkt. 62-2 at 2 (No.1).)  LDI did not respond to the interrogatory.

After Apple sent a letter requesting that LDI dismiss its case due to invalidity for obviousness-type double patenting, LDI contended that the asserted claim was not invalid, suggesting that no terminal disclaimer was required because "the Patent Office eventually dropped its request."  (Email from LDI's counsel, Dkt. 62-8 at 1.)  LDI's counsel promised to "address these issues in our interrogatory responses" but never did.  (*Id.*)

When Apple moved for summary judgment on double patenting, LDI attempted to sandbag Apple with new arguments.   After Apple demonstrated the fatal flaw in LDI's "parameter" argument in summary judgment briefs, LDI tried to introduce a new distinction in the later technology tutorial between "call by value" and "call by reference," which it had not

Cooley LLP
Attorneys At Law
Palo Alto

13.

Apple's Mot. for Fees & Costs
13-cv-02943-WHA

previously disclosed in its interrogatory responses, claim construction disclosures, or summary judgment briefs.  As the Court observed:

> [T]o be frank with you, that's the shifting-sands approach to patent litigation, where a new argument comes out of left field and somehow after the fact untimely, hasn't been properly preserved, and you saw an opportunity at the tutorial that I thought might help me and, in fact, you wind up using it as an opportunity to larder the record with some new theory. That's all that was going on.... Otherwise this just becomes a revolving crap game. Anybody can stand up and say anything any time in a patent case, and it always counts. So that's not the way it works. We've got all these rules. We're going to follow these rules.

(Oct. 16, 2014 Tr., Dkt. 78 at 28:8-23.)  *Action Star*, slip op. at 9-11 (finding the case exceptional because plaintiff "litigated the instant case in an unreasonable manner" where it had responded to a discovery request stating that it had no responsive documents, but then produced video printouts and a declaration three months later in opposition to a motion for summary judgment).

In sum, Apple agrees with the Court's assessment at the oral argument: "So to me it looks like somebody goofed up when they filed this lawsuit … under the incorrect premise that there had been a terminal disclaimer filed in time, and it turned out not to be true, but you're pushing on anyway."  (Oct. 16, 2014 Tr., Dkt. 78 at 23:20-23.)  Faced with cases where the patent owner continues to press its case in the face of clear notice of its lack of merit, district courts have awarded fees.  *Lumen View*, slip op. at 14 (finding that patentee Lumen "proceeded with an obviously baseless lawsuit" even after defense counsel informed Lumen in both phone calls and a letter why there was no infringement); *Yufa*, slip op. at 7-8 (finding that after patentee knew that "he had no admissible evidence to support his claims of infringement rendering his lawsuit objectively baseless," he "continued to litigate his case").

### c.    LDI's improper litigation tactics pervaded the case.

LDI's improper litigation tactics extended far beyond the obviousness-type double patenting issues.  *First*, LDI's complaint advanced willfulness and indirect infringement allegations despite having no evidence that Apple had any pre-expiration knowledge of the patent-in-suit.  As the Court held in dismissing the willfulness allegations in LDI's original

Cooley LLP
Attorneys At Law
Palo Alto

14.

Apple's Mot. for Fees & Costs
13-cv-02943-WHA

1   complaint, for example, "'Logic Devices' bald complaint is devoid of any allegation that Apple

2   knew or should have known of an objectively high risk that its actions would result in

3   infringement of a valid patent."  (MTD Order, Dkt. 36 at 4.)  The Court's order stated that

4   "defendant's motion to dismiss is GRANTED, on the condition that plaintiff reimburse defendant

5   for the expense (fees and costs) for this motion (reserving appellate rights)."  (Dkt. 36 at 5

6   (emphasis omitted).)

7        In denying LDI's motion to amend its willfulness and infringement allegations, the Court

8   likewise held that "Plaintiff's proposed amendments fall woefully short of pleading Apple's

9   knowledge of the asserted patent and infringement."  (MTA Order, Dkt. 43 at 3.)  The Court

10  concluded its order stating: "A January 7 order warned plaintiff that it would be liable to

11  reimburse defendant for fees and costs incurred from the motion to dismiss."  (*Id.* at 7.)  LDI,

12  however, never paid any of Apple's fees or costs associated with the motion to dismiss, stating

13  "that it would not be paying the fees" because it "will proceed on Plaintiff's original Complaint."

14  (Stip., Dkt. 45 at 2:8-13.)

15        ***Second***, LDI also failed to participate in the disclosure process under the patent local

16  rules.  LDI's counsel did not provide any 4-1 or 4-2 disclosures and waited until after 4pm the

17  day of the 4-3 joint claim construction statement was due to propose any constructions.  (Farkas

18  Aff., Dkt. 50 at 3, ¶ 10.)  LDI also delayed until after the joint claim construction statement was

19  filed to provide the purported evidence in support of those constructions.  (Resp. to OSC, Dkt.

20  50-1.)

21        The Court ordered LDI to show cause "why it has apparently failed to follow our district's

22  patent local rules."  (OSC, Dkt. 49 at 2.)  In response, LDI asserted: "I did not properly appreciate

23  ... the necessary adherence to the timing mandated by Patent Local Rules 4-1 and 4-2, particularly

24  since my client had not yet formally retained its patent expert."  (Farkas Aff., Dkt. 50 at 4, ¶ 14.)

25        LDI's explanation for its failures contradicted the record.  The Court's scheduling order

26  was clear: "[T]he infringement and invalidity procedures must still be followed, including Rules

27  ... 4-1 to 4-4."  (Dkt. 32, ¶ 19.)  Moreover, LDI's purported ignorance contradicts the many

28  emails from Apple's counsel regarding the claim construction disclosure process and the fact of

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15.

APPLE'S MOT. FOR FEES & COSTS
13-CV-02943-WHA

1    Apple's timely claim construction disclosures themselves, which LDI's counsel received.  (*E.g.*,

2    Ex. 5 ("[W]e'd like to do a simultaneous exchange for this Thursday's exchange of terms for

3    construction.  How does 4pm PT work for you?"); Ex. 6 (providing Apple's 4-1 disclosures); Dkt.

4    62-6 at 1 ("Under the case schedule and Patent Local Rule 4-2, the parties need to simultaneously

5    exchange proposed constructions tomorrow. Does exchanging proposed constructions at 5:00pm

6    tomorrow work for LDI?"); Ex. 7 (providing Apple's 4-2 disclosures).)

7         ***Third***, LDI also inappropriately increased Apple's costs and hampered the preparation of

8    Apple's defenses by failing to comply with its discovery obligations.   Despite Apple's

9    comprehensive requests for production, LDI produced only a handful of documents—LDI's

10   entire production was limited to a small number of binders containing LDI user guides from

11   LDI's counsel's office and the agreement between LDI and Star Semiconductor.  LDI's failure to

12   meet its discovery obligations required Apple to make repeated requests for LDI to supplement.

13   Likewise, as noted above, LDI did not respond to any of Apple's interrogatories, despite repeated

14   requests from Apple.

15        ***Fourth***, in addition to the obviousness-type double patenting issue, LDI's liability case

16   suffered from numerous dispositive defects.  LDI never presented infringement contentions with

17   any coherent or viable theory.  For example, LDI has never had any evidence that Apple used any

18   graphic "sketch-and-realize" type systems in any of the accused activities or that Apple wrote any

19   code using the required "micro" keyword from the patents.

20        Moreover, LDI failed even to attempt to prove up its case.  LDI served infringement

21   contentions that were admittedly speculative and lacked evidentiary support: "For some claim

22   elements, Plaintiff has identified elements that are likely to be infringed.  Absent discovery,

23   specific information on Apple's development process is not available ...." (Infr. Conts., Dkt. 41-1

24   at 3.)  LDI's damages disclosures likewise expressly recognized LDI's need for discovery: "The

25   computations set forth in this Initial Disclosure has been very preliminary in nature since no

26   formal discovery has been undertaken." (LDI's Init. Discls., Ex. 1 at 5.)  Yet, LDI did not serve

27   any discovery in the case.  Indeed, the deadline for written discovery expired even before the

28   Court granted summary judgment of invalidity.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.

APPLE'S MOT. FOR FEES & COSTS
13-CV-02943-WHA

*Finally*, LDI also made significant misstatements during the case, including its repeated misstatements about the terminal disclaimer during half the discovery period in the case and the status of the Arizona case LDI's counsel described in attempting to have the case further extended.

### C.   Apple's Requested Attorney Fees and Costs Are Reasonable.

Apple is seeking fees calculated using the "lodestar" method.  "In the Ninth Circuit, courts calculate a reasonable fee by multiplying the number of hours reasonably worked on litigation by a reasonable hourly rate, arriving at a lodestar."  *Rawcar Group v. Grace Med.*, No. 13-1105, slip op. at 11 (citing *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995)).  "When calculating reasonable attorneys' fee, the Court must consider both the reasonableness of the hourly billing rate and the number of hours required."  *Yufa*, slip op. at 8.

As detailed below, the requested number of hours, rates, and overall lodestar amount ($465,190) are reasonable in light of the circumstances presented by this case.

### 1.   The requested hours were reasonably expended in defending against LDI's suit.

LDI's pursuit of this suit has caused Apple to incur substantial attorney fees.  In total, the attorneys and paralegal who worked on the case were required to spend approximately 750 hours on activities necessary to litigating the case and preparing Apple's defenses.  As detailed in the accompanying Damstedt Declaration, these outside counsel team members performed standard and necessary activities, including drafting the pleadings and initial case management filings; performing a fact investigation; researching and drafting initial disclosures, invalidity contentions, and claim construction-related disclosures; conducting discovery; performing ongoing case management activities; working with expert witnesses; engaging in settlement discussions; drafting and presenting the tutorial; drafting and arguing the invalidity summary judgment motion; and drafting this fees motion.  The individual time entries are provided as Exhibit B to the Damstedt Declaration.  A detailed summary of the tasks performed during the case is provided in paragraphs 3-5 of the Damstedt Declaration.

Cooley LLP
Attorneys At Law
Palo Alto

17.

Apple's Mot. for Fees & Costs
13-cv-02943-WHA

**2.     The requested rates are consistent with market rates for this legal practice and geographical area.**

Apple seeks to recover fees for the time spent by five timekeepers from the outside counsel team at Cooley LLP: Tim Teter, Ben Damstedt, Priya Viswanath, Matt Leary, and Claire Cochran.  Mr. Teter is a partner with 21 years of experience and was chief counsel on the case.  Mr. Damstedt is a partner with 11 years of experience.  He managed the case day-to-day and drafted many of the filings.  Ms. Viswanath is an associate with 9 years of experience, who participated in all phases of the case.  Mr. Leary is an associate with 8 years of experience, who participated at the pleadings stage.  Ms. Cochran participated as a paralegal on all phases of the case.  Details regarding the qualifications, roles, and requested rates for the various team members are provided in the Damstedt Declaration.

To determine the reasonableness of the requested hourly rates, courts look to a variety of factors.  "[T]he court must look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation."  *Yufa*, slip op. at 8 (citing *Camacho v. Bridgeport Fin.*, 523 F.3d 973, 979 (9th Cir. 2008)).  Here, the "relevant community" is the Northern District of California, "the forum where the district court sits."  *Id.*  Courts also recognize that "the field of intellectual property law requires specialized knowledge."  *Id.*  This matter involved the fields of microprocessors, digital signal processing, graphics processors, and compilers.  The attorneys on this matter had the legal and technical expertise needed to evaluate the asserted patent and claims, analyze LDI's infringement claim, and develop invalidity defenses.  (Damstedt Decl. ¶¶ 10-19.)

Data showing the reasonableness of the requested rates come from the survey of the American Intellectual Property Law Association.  According to the AIPLA survey for 2013, "the average billing rate for IP attorneys in the San Francisco Bay Area was $736.00 per hour with a median rate of $500.00 per hour."  *Yufa*, slip op. at 8 (citing the AIPLA Report of the Economic Survey 2013).  The rates billed by each Cooley attorney are below the average rates.

A variety of district courts have approved similar rates.  *Rubbermaid Comm. Prod. v. Trust Comm. Prod.*, No. 13-2144, slip op. at 13 (D. Nev. Aug. 22, 2014) ("Taking into account

Cooley LLP
Attorneys At Law
Palo Alto

18.

Apple's Mot. for Fees & Costs
13-cv-02943-WHA

the complex nature of intellectual property law, the years of intellectual property law experience, and the discounted hourly rates for the attorneys … the AIPLA survey verifies that the attorneys' fees requested are within the realm of similarly situated attorneys."); *PersonalWeb Tech. v. Google*, No. 13-1317, slip op. at 5 (N.D. Cal. Aug. 19, 2014) (finding Google's attorneys' rates reasonable where "[f]or the most part, the attorneys charge a rate within the reported average to seventy-fifth percentile range [in the AIPLA survey] for their respective locations considering their experience");  *BK-Lighting v. Vision3 Lighting*, No. 06-2825, slip op. at 9 (C.D. Cal. Nov. 16, 2009) ("In view of counsels' experience and the submitted survey data, as well as its own knowledge of prevailing rates in the Los Angeles area for intellectual property attorneys, the court concludes that FVC's rates are reasonable."); *Love v. Mail on Sunday*, No. 05-7798, 2007 WL 2709975, at *8 (C.D. Cal. Sept. 7, 2007) (finding rates submitted were "consistent with the rates typically charged by other highly-regarded southern California law firms for similar work by attorneys of comparable experience" (citations omitted)).

> **3.**      **The overall lodestar amount is well below litigation fees and costs for similar cases.**

Moreover, the total lodestar amount of $465,190 is reasonable as a whole.  As an initial matter, "[t]here is a 'strong presumption' that the lodestar figure represents a 'reasonable fee' that the court should enhance or reduce only in 'rare and exceptional cases.'"  *Rubbermaid*, slip op. at 13 (citing *Fischer v. SJB-P.D.*, 214 F.3d 1115, 1119 n.3 (9th Cir. 2000)).

Due to LDI's efforts to prolong the case, it continued until just before the close of fact discovery.  Due to Apple's efforts to litigate the case efficiently, its requested fees are much lower than fees for comparable cases at that stage.  According to the 2013 AIPLA survey, average costs through the end of discovery are $3.314 million in the Northern District of California when defending against a non-practicing entity demanding damages of more than $25 million.  (Ex. 8, AIPLA Report of the Economic Survey, at I-147.)  Apple's requested fees are much lower than that average; indeed, Apple's requested fees are significantly lower than even the average for the smallest category of cases.  (*Id.* (average for fees in cases with demands of $1 million or less is $758,000).)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

19.

APPLE'S MOT. FOR FEES & COSTS
13-CV-02943-WHA

Moreover, the overall amount requested is less than the amount actually paid by Apple. (Damstedt Decl. ¶ 26.)  As a frequent patent litigant, Apple's having paid more than the requested amount provides good market evidence of the reasonableness of the amount.  The fact that Apple has paid more to litigate the case than it is requesting in fees also supports its fees request, given section 285's goal of compensating defendants for their actual "monetary outlays." *Central Soya v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed Cir. 1983) ("The purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit.").

### 4.      Apple's requested non-taxable costs are reasonable.

Apple also seeks non-taxable costs in the amount of $14,154.29, for expenditures such as prior art research expenses and mailing costs that are not covered by the costs statute.  Such costs are recoverable to compensate a prevailing party in an exceptional case under section 285. *Rubbermaid*, slip op. at 13 (awarding costs); *Yufa*, slip op. at 13; *Central Soya*, 723 F.2d at 1578 ("We interpret attorney fees to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit.").  These costs were reasonable and necessarily incurred in defending this case.  (Damstedt Decl. ¶¶ 27-28.)

## V.      CONCLUSION

LDI's improper filing and pursuit of this case has imposed a substantial and unnecessary cost on Apple.  Apple thus requests that the Court award Apple attorney fees in the amount of $465,190 and costs in the amount of $14,154.29.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

20.

APPLE'S MOT. FOR FEES & COSTS
13-CV-02943-WHA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: October 30, 2014

*/s/ Benjamin G. Damstedt*

TIMOTHY S. TETER (171451)
(teterts@cooley.com)
BENJAMIN G. DAMSTEDT (230311)
(bdamstedt@cooley.com)
PRIYA B. VISWANTH (238089)
(pviswanath@cooley.com)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:       (650) 843-5000
Facsimile:        (650) 849-7400

MATTHEW LEARY (pro hac vice)
(mleary@cooley.com)
COOLEY LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021-8023
Telephone:       (720) 566-4000
Facsimile:        (720) 566-4099

Attorneys for Defendant Apple Inc.

111211009

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

21.

APPLE'S MOT. FOR FEES & COSTS
13-CV-02943-WHA